## CRIMINAL PROSECUTIONS AND PROCEEDINGS IN BASTARDY DISTINGUISHED.

Common Pleas Court of Lawrence County.

STATE OF OHIO v. FRANK WARD.

Decided, June 4, 1909.

*Rescuing a Prisoner by Force—Prosecution for—Can not be Maintained unless the Prisoner is Charged with an Offense—Bastardy not an "Offense" Within the Statute—Nor is it a Criminal Prosecution—But a Statutory Remedy to Enforce a High Moral Duty—Words and Phrases—Authority of Constable to Select an Assistant—Section 6903.*

An indictment charging a defendant with having rescued another who was in the lawful custody of a constable under a warrant issued by a justice of the peace in bastardy proceedings, is insufficient

under Section 6903, Revised Statutes, because the person so rescued was not charged with an "offense."

*Joseph C. Riley,* Prosecuting Attorney, for the State.
*Thomas D. Shirkey,* for defendant.

CORN, J. .(orally).

Heard on demurrer to the indictment.

This is a prosecution under Section 6903 of the Revised Statutes of Ohio, which provides that:

"Whoever having lawfully the custody of a person charged with or convicted of an offense, voluntarily suffers such prisoner to escape and go at large, and whoever rescues such prisoner by force from the custody of such person or from a jail, or any place of confinement, shall be fined not more than five hundred nor less than fifty dollars or imprisoned not more than three months or both."

The indictment was returned by the grand jury at the present term of this court, and charges in substance that one Charles Edwards, a justice of the peace of this county, upon a complaint in bastardy filed before him, had issued his lawful warrant to any constable of this county commanding him to take one John Ward, and have the body of him, the said John Ward, forthwith before the said justice, averring that the said John Ward was charged with bastardy upon the complaint in writing filed by one Maggie Fuller, and that the indictment charges the defendant, Frank Ward, with unlawfully and violently assaulting the constable and his assistant who had arrested the said Ward, and unlawfully and by force rescuing and setting at large from the custody of said constable the said John Ward.

To this indictment a general demurrer has been filed and in argument counsel for the defendant raises two points. The first is in reference to the averment in the indictment that the said John Ward, whom the indictment charges that Frank Ward rescued, was in the custody of Lee Singer, who is designated in the indictment as a regularly deputized assistant constable, claiming that there is no such office in this state.

It is sufficient to say in reference to that argument that the indictment charges that the warrant was delivered to John

Smith, one of the constables of this county, and that John Smith, the constable aforesaid, did take and have the said John Ward in his custody together with a regular deputized assistant constable, Lee Singer. A constable has a right to select an assistant, and it is immaterial by what term that assistant is designated, and upon this point the demurrer is not well taken, because it sufficiently appears from the indictment that the constable, a regularly authorized and qualified constable, did make the arrest, and had this man in his custody, together with an assistant, Lee Singer.

The other point raised in argument is that the said John Ward, named in the indictment and who it is claimed was forcibly rescued, was not charged with nor convicted of an offense.

· It is well known that penal statutes must be strictly construed. This section under which the indictment was returned provides that the person who is rescued must be either charged with or convicted of an *offense*.

The indictment charges that the warrant had been issued upon a complaint in bastardy upon the oath of Maggie Fuller, and it will be observed that it is not stated in this indictment that Maggie Fuller was an unmarried woman, which is necessary in all proceedings in bastardy; that is to say that bastardy proceedings can only be instituted upon the oath of an unmarried woman.

·But as I was about to say the warrant was issued upon a complaint in bastardy, and the arrest was made upon that warrant, and it is argued on behalf of the defendant that John Ward was not charged with an offense as required by Section 6903. This raises the very interesting question: What is the meaning of the word "offense" as used in this section of the statutes?

Bouvier in his law dictionary defines the word offense as "doing that which a penal law forbids to be done or omitting to do what it commands. In this sense it is nearly synonymous with crime. In a more confined sense it may be considered as having the same meaning as misdemeanor, but it differs from it in this: that it is not indictable but punishable summarily by forfeiture or a penalty."

In Vol. VI of "Words, Phrases and Clauses Judicially Defined" beginning on page 4915 is found a definition of the word "Offense" from various jurisdictions in the United States:

"An offense in its legal signification means the transgression of a law." Citing *Moore* v. *State of Illinois,* 55 U. S. (14 Howard), 13, and two cases from the state of New York.

"As synonymous with the word 'offense' Webster gives misdemeanor, transgression, delinquency." Citing *State, ex rel,* v. *Walbridge,* 41 American State, 663.

In the case of *State* v. *West,* 42 Minnesota, 147, it is held:

"The terms 'crime,' 'offense,' and 'criminal offense' are held to be synonymous and are ordinarily used interchangeably, and include any breach of law established for the protection of the public as distinguished from an enforcement of mere private rights."

In *Illies* v. *Knight,* 3 Texas, 312, it is held as follows:

"An offense is defined to be an act committed against the law, or omitted where the law requires it, and punishable by it; and where the statute speaks of a party as having committed an offense we understand a crime, and when it employs the words 'crime' and 'offense' we understand these as mere synonymous terms or as an expression of different degrees of crime. To commit an offense is in legal parlance to be guilty of crime. The words 'crime' and 'offense' are used in the law books as convertible terms and the latter word is often employed by them in the common and under our statute law as crime of every degree."

General Statutes of Kansas:

"The word offense means any act or omission for which the law of this state prescribe a punishment."

The statute of Missouri, Section 1511:

"The term 'offense' when used in any statute shall mean any violation of law liable to punishment by criminal prosecution."

The code of West Virginia provides:

"That the word 'offense' includes every act or omission for which a fine, forfeiture, or punishment is imposed by law."

The code of New York provides:

"The term 'offense' when used in any statute is to be construed to mean any offense for which any criminal punishment may be inflicted." Citing *Behan* v. *People,* 3 Parker Criminal Reports, 686.

The code of Texas provides:

"An offense is an act or omission forbidden by positive law and to which is annexed, on conviction, any punishment prescribed in this code."

These references give a pretty good idea of what the codes and decisions of various states regard as the meaning of the word "offense."

Now, it appears from this indictment that Frank Ward, the defendant, is charged with rescuing John Ward, who was in the custody of the constable upon a warrant in a bastardy proceeding and the question arises: Is a person arrested in a bastardy proceeding charged with an "offense" as contemplated by Section 6903?

On page 718 of Vol. I of Words and Phrases Judicially Defined it is said:

"Bastardy proceedings are to be regarded as essentially a civil action, accompanied by the extraordinary remedy of arrest and imprisonment for the purpose of enforcing judgment rendered in the case."

And on the same page it is said:

"Proceedings in a case of bastardy may not be considered as penal but only as a means to enforce the discharge of legal obligations."

In the case of *Devinney* v. *State,* in Wright's Report, p. 565, Judge Wright uses this language:

".This prosecution (meaning a bastardy proceeding), is *quasi* criminal, but not strictly so, and if conducted in the name of the state at all it should appear to be on the relation or complaint of the real party. We think it would be more proper to carry on the suit in the name of the party complaining."

And in the same case it is said that the state is in no way interested in it, that the prosecuting attorney is not bound to attend such suits, etc.

Now bearing in mind what Judge Wright has said, that it would be more proper to carry on the suit in the name of the party complaining and that the state is not interested in the suit and that it is at most only *quasi* criminal, we refer to Section 20 of Article IV of the Constitution of Ohio, which provides that all prosecutions shall be carried on in the name and by the authority of the state of Ohio; and Section 1273 of the Revised Statutes provides that the prosecuting attorney shall prosecute on behalf of the state all complaints, suits and controversies in which the state is a party, thus clearly showing that a bastardy proceeding is not a criminal proceeding.

In the case of *Perkins* v. *Mobley,* 4 O. S., 673, the Supreme Court say:

"In many of the states begetting a bastard child is made an offense, and punished by indictment; but in this state it is not so. The proceeding here is not strictly civil or criminal. It neither punishes a crime nor gives redress for a civil injury. It is simply a statutory remedy to enforce a high moral duty; and the moral duty is enforced to prevent a burden which ought to rest upon the father from falling upon the public. It may be instituted upon the complaint of the mother, or if she neglects it, or fails to prosecute to effect, by the proper public authorities. At one point in the proceedings a settlement may be made," etc.

In the case of *Carter* v. *Krise,* 9 O. S., 405, it is said:

"It is certainly true that none of the forms and modes of proceeding under our bastardy act are analogous to proceedings in criminal cases. And yet most of the incidents to such a proceeding are such as belong to proceedings strictly civil. It is or may be prosecuted in the name of a private party only, the mother of the child, or the township trustees. On a bond of indemnity being given that the child shall not become a public charge, the proceedings may be compromised and discharged by the mother of the child. It is prosecuted neither by information nor indictment. It is no part of the duty of the attorney for the state to prosecute it. The defendant after con-

viction is entitled to all the benefit of the act for the relief of insolvent debtors; and I suppose it will not be claimed that at any stage of the proceedings he can be the subject of pardon by the executive. But, after all, this question can proper.y be determined only by looking into the essential nature, aim, and object of the proceeding. Does it aim to *punish* the defendant? Or is it in its nature simply a remedy to enforce the discharge of a civil and moral duty. It is clearly the latter and that only. It is the duty of every man who becomes the father of a child to contribute to its support and to save the public from the burden of its maintenance. This duty the statute aims to enforce. There is nothing punitive about it. If any crime be involved in the accusation against the defendant, it must consist in the act of illicit intercourse by which the bastard child was begotten; and of this crime the parties are equally guilty, whether paternity do or do not result; and yet by our law there is no crime where there is no paternity, unless the parties live and cohabit in a state of adultery or fornication, and then they may be prosecuted under another statute, by information or indictment, and punished by fine and imprisonment.''

Following the same line is the case of *Musser* v. *Stewart*, 21 O. S., 356:

''This is not a suit to recover a sum of money owing from the defendant to the complaining party. The liability sought to be enforced is not founded upon contract express or implied, but originates in the wrongful act of the defendant against the consequence of which the statute is designed to protect the public. Proceedings under the statute are only authorized in cases where the mother of the child is a resident of this state and the child is thus subject to become a public charge. If she neglects to prosecute, the public authorities of the locality liable to be charged with its support may do so, unless security is given to save them from such liability. The statute is in the nature of a police regulation. Its main object is to furnish maintenance for the child and indemnity to the public against liability for its support. The act of the putative father is regarded as an offense against the peace and good order of society; and the penalty which the law imposes for his transgression is to enforce upon him the duty of making provision for the maintenance of his illegitimate offspring. The sum in which the defendant is ordered to stand charged for the support of the child is not imposed as an unconditional liability. It is a provision by

way of security.   If the child dies, the order of maintenance, as to the future becomes inoperative.''

This decision is the only one I have found in which the word ''offense'' is used in connection with a proceeding in bastardy, and it is used in such a way as to indicate that it does not contemplate a criminal offense; it is an offense against the peace and good order of society.

It will be seen from these different authorities that there is a vast difference between a criminal prosecution and a proceeding in bastardy.   I need only call your attention to the fact that in a bastardy proceeding the rules of evidence are different from the rule in a criminal case.   It is well known that in a criminal case the defendant must be proven guilty beyond a reasonable doubt, while in the other proceeding the complainant is only required to prove the truth of her complaint by a preponderance of the evidence.

So the conclusion that I have reached in the light of these authorities is that John Ward, when he was in the custody of the constable under this complaint in bastardy was not charged with an ''offense'' as contemplated by Section 6903, and that, therefore, Frank Ward, the defendant, if he did rescue him from the constable, did not violate the provisions of Section 6903.

The demurrer will therefore be sustained and the defendant discharged.